**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| CYNTHIA FREELAND,<br>Plaintiff, | §<br>§<br>§ | |
| vs. | § | CIVIL ACTION NO. 3:24-4072-MGL |
| KEMIRA CHEMICALS, INC.,<br>Defendant. | §<br>§<br>§ | |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION**
**AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Cynthia Freeland brought this lawsuit against her former employer, Defendant Kemira Chemicals, Inc., in the Lexington County Court of Common Pleas. In addition to Freeland's Title VII sex discrimination claim, she also asserts two state law claims: breach of contract and a violation of the South Carolina Payment of Wages Act.

Kemira subsequently removed the case to this Court, and filed counterclaims for conversion and quantum meruit. The Court has jurisdiction over Freeland's discrimination claim in accordance with 28 U.S.C. § 1331, and supplemental jurisdiction over the parties' state claims under 28 U.S.C. § 1367.

The matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge suggesting Kemira's motion for summary judgment be granted and the parties' state law claims be remanded to state court. The Magistrate Judge prepared the Report in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

## II. FACTUAL AND PROCEDURAL HISTORY

Freeland was employed by Kemira and its predecessor for many years. She ultimately served as a Key Account Manager in Kemira's Oil & Mining Segment. Her supervisor was John Mangano.

The record reflects Freeland performed well in certain respects. In particular, she exceeded her sales-revenue target for 2021. In February 2022, Mangano completed Freeland's 2021 Performance and Development Discussion and Performance Evaluation. Freeland received an overall rating of "meets expectations."

Mangano subsequently retired and, on March 1, 2022, Forrest Strickland became Freeland's supervisor. During a transition period, Strickland shadowed Mangano and became familiar with the Account Managers he would supervise.

Between March 1 and April 20, 2022, Strickland documented numerous performance concerns regarding Freeland. On April 20, 2022, Strickland sent an email to Human Resources detailing his concerns. He stated Freeland's performance had deteriorated and, in his view, termination was warranted although, according to Freeland, "at the time of her April 2022 termination, [she] had already reached her sales target for all of 2022." Freeland's Objections at 4. Thus, Strickland decision to terminate Freeland was obviously unrelated to her sales performance.

After Strickland consulted with Human Resources and his supervisor, Freeland was terminated effective April 28, 2022. Thereafter, Freeland filed this lawsuit after which Kemira filed its motion for summary judgment.

The Magistrate Judge filed her Report on July 1, 2026, Freeland filed her objections on July 14, 2026, and Kemira filed its objections on July 15, 2026. Thereafter, Freeland filed her reply to Kemira's objections on July 16, 2026, and Kemira filed its reply to Freeland's objections on July 28, 2026. Thereafter, on August 26, 2026, Freeland filed a sur-reply to Kemira's reply. Having carefully reviewed the parties objections, the Court holds them to be without merit. It will therefore enter judgment accordingly.

## III. STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court will provide here a brief survey of the applicable federal sex discrimination law. Title VII makes it unlawful for employers to take any personnel actions affecting employees "on the basis of race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). With a lack of direct evidence of discrimination, which is what we have here, a plaintiff may proceed under the burden-shifting paradigm set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) to prove her case. The Fourth Circuit has succinctly described the framework as follows:

"Under the burden-shifting framework, a plaintiff must first offer a prima facie case." *Sempowich v. Tactile Systems Technology, Inc.*, 19 F.4th 643, 649 (4th Cir. 2021) (citing *Lettieri v. Equant*, 478 F.3d 640, 646 (4th Cir. 2007)).

> To do so, a plaintiff must show . . . (1) she is a member of a protected class; (2) her employer took an adverse action against her; (3) she had been fulfilling her employer's legitimate expectations at the time of the adverse action; and (4) the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination, including because the employer left open the position or replaced the plaintiff with someone outside the protected class.

*Id*.

"Once a plaintiff makes out a prima facie case, the burden shifts to the employer to put forth a nondiscriminatory explanation for its actions." *Id*. "If the employer does so, the burden then shifts back to the plaintiff to show . . . the employer's explanation was actually a pretext for discrimination." *Id.*(citation omitted) (internal quotation marks omitted).

It is without dispute Freeland is able to satisfy the first two requirements of making out a prima facie sex discrimination claim. It is numbers three and four on which the parties disagree: "(3) she had been fulfilling her employer's legitimate expectations at the time of the adverse action; and (4) the adverse action occurred under circumstances raising a reasonable inference of unlawful discrimination, including because the employer left open the position or replaced the plaintiff with someone outside the protected class." *Id*. at 649-50.

## IV. DISCUSSION AND ANALYSIS

"[T]he two reasons [Freeland] was ultimately told as being causes for her termination were 'not attending a customer meeting in person in February 2022 and not responding to a customer in

a timely manner in mid-March 2022[.]'" Report at 13. Kemira evaluated Freeland and others by employing these tools: a Performance and Development Discussion (PDD) that was used to measure bonuses through meeting company targets and individual targets, and a Performance Evaluation and Potential Assessment (Performance Evaluation).

Freeland offers ten objections to the Report. First, she argues the Magistrate Judge "erroneously characterizes [Kemira's] own performance evaluations, and [Freeland's] direct evidence refuting the stated reasons, as [her] 'self-assessment and speculation[.]'" Freeland's Objections at 2 (quoting Report at 14) (emphasis omitted) (capitalization standardized).

The Court agrees Freeland's 2021 performance evaluation was evidence generated by Kemira rather than by Freeland herself. The Court also recognizes Freeland's evidence concerning particular events is evidence that must be considered when adjudicating a summary judgment motion.

There are three subparts to this objection. First, Freeland points to a 2021 evaluation by Mangano, her previous supervisor, in which he found she "meets expectations[.]" Freeland's Objections at 2 citation omitted). But he stated "[t]he WHAT part was extremely strong but the HOW portion doesn't allow me to rate her higher than a 3 [meets expectations]." Report at 10 (citation omitted) (internal quotation marks omitted). Mangano also noted "the '[h]ow' portion was sub standard and needs to improve." Report at 10 (citation omitted). "[T]he 'what' portion [refers to] the financial side and the 'how' portion [is concerned with] the actual performance to accomplish the financial goals." *Id*. at 11.

Freeland notes Mangano's February 2022 "meets expectations" evaluation occurred just ten weeks before her April 28, 2022, termination. But the fact the evaluation was ten weeks before Freeland's termination lacks any import.

Mangano was evaluating Freeland for her performance in 2021, versus her performance in February of 2022. Thus, his evaluation concerned her performance that was, at the latest, in December 2021, four months before her termination. The February 2022 evaluation therefore fails to provide any evidence whatsoever whether Freeland was meeting Kemira's legitimate expectations at the time of her April 2022 termination.

Starting March 1, 2022, when Strickland replaced Mangano as Freeland's supervisor, he documented the following performance deficiencies by Freeland he says he observed from March 1, 2022, through April 20, 2022:

> (a) failed to submit a required low-profit margin report by the original due date of February 18, ultimately turning it in approximately five weeks late after the Company had proceeded without her input; (b) failed to submit a required monthly report for February 2022; (c) failed to coordinate backup coverage for a day of PTO, listing a colleague who was also on PTO and thereby causing customer confusion; (d) failed to attend a scheduled customer meeting she set for March 2, 2025 with one of her biggest customers; (e) provided a price quote to a prospective customer without required coordination with product management, contrary to Company policy and market exclusivity considerations; (f) failed to attend in person a significant business review with one of her largest accounts after other team members had traveled for the meeting, joining only virtually the following day; (g) missed the March 31 . . . deadline and submitted materials only after repeated requests on April 15; (h) was unreachable by a major customer regarding an emergency shipment request, necessitating my intervention to service the account; (i) failed to respond to a customer's repeated requests for product samples over the course of a month; (j) failed to provide guidance to internal administrative personnel on a product return after multiple inquiries, requiring escalation; (k) failed to respond to pricing requests from a key customer for nearly two weeks, prompting me to resolve the issue directly; and (l) misrepresented expected profitability on a newly quoted opportunity, which materialized at a substantially lower margin than stated.

Report at 6 (citation omitted) "Strickland provided a detailed summary of these concerns to . . . [Kemira's] Human Resources Department." *Id.* Thus, Freeland has failed to establish "she had been fulfilling her employer's legitimate expectations at the time of the adverse action[.]" *Sempowich*,

19 F.4th at 649. Both her former supervisor, Mangano, who evaluated her 2021 performance, and her then-current supervisor, Strickland, agreed she failed to meet her performance requirements.

Freeland also states she "received no write up, no counseling, and no discipline of any kind." Freeland's Objections at 3. But, as the Magistrate Judge noted in the Report, "the only reasonable inference to be drawn from considering Whitehead's testimony is . . . Kemira's discipline policy was not a mandatory progressive policy." Report at 12. In other words, Kemira's policy failed to mandate she be written up, counseled, and/or disciplines prior to her termination.

The second sub-part to this objection concerns Freeland's failure to attend a customer meeting in person. Instead, she attended virtually. This, the reader will recall, is one of the two reasons Kemira gave for terminating Freeland's employment.

Freeland's argument "whether the incident was discharge worthy . . . is the jury's task[,]" Freeland's Objections at 3, improperly conflates the question of whether Kemira's decision to terminate Freeland was justified with the question of whether the decision was discriminatory. The Fourth Circuit has repeatedly rejected such an approach.

In a Title VII sex-discrimination case, which alse involved an employee's termination, the Fourth Circuit explained "[o]ur sole concern is whether the reason for which the defendant discharged the plaintiff was discriminatory." *DeJarnette v. Corning Inc*., 133 F.3d 293, 299 (4th Cir. 1998) (citation omitted) (internal quotation marks omitted). "Thus, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Giannopoulos v. Brach & Brock Confections, Inc*., 109 F.3d 406, 411 (7th Cir. 1997).

Accordingly, the issue is not whether the Court, or a jury, would have made the same employment decision Kemira did. Instead, the relevant question is whether Kemira's two stated

reasons for Freeland's termination were the actual reasons, and whether Freeland has produced evidence from which a reasonable fact finder could conclude sex discrimination was the real reason for the decision. "The crucial issue in a Title VII action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment." *Jiminez v. Mary Washington College*, 57 F.3d 369, 383 (4th Cir. 1995).

Freeland, therefore, is unable to establish pretext merely by showing Kemira's decision was mistaken, unfair, unwise, or incorrect. What matters here is whether Kemira's asserted reasons were its genuine reasons for Freeland's termination, and whether that reason was unlawfully discriminatory.

Kemira states in its reply, "[a]s to the customer meeting and credit card explanation, [Freeland's] . . . characterization of why she attended virtually rather than in person does not undermine Strickland's honest belief . . . the virtual, rather than in-person, attendance was a problem regardless of the underlying cause." Kemira's Reply at 6.

"Third," according to Freeland, "the Magistrate Judge] does not really address the sworn statement in [her] verified Charge of Discrimination that, at the time of her April 2022 termination, [she] had already reached her sales target for all of 2022." Freeland's Objections at 4. But, as noted above, there were two parts to Kemira's evaluation of Freeland: the "what" part, which refers to the financial side and the "how" portion, which is concerned with the actual performance to accomplish the financial goals.

From the record before the Court, it appears Freeland did well in meeting her sales targets, but poorly in her performance in accomplishing those targets. Thus, the Court is unable to say it was

unlawful for Kemira to fire Freeland for her failure to meet certain performance requirements, although she met her sales goals.

Freeland's reliance on *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244 (4th Cir. 2025) is misplaced inasmuch as it fails to alter the result. This case fails to establish a rule stating an employee's denial of an employer's performance criticisms automatically creates a genuine issue of material fact. Rather, as in every Rule 56 case, the question is whether the evidence, viewed as a whole, would permit a reasonable jury to find intentional discrimination. Here, the evidence fails to support such an inference.

Freeland also relies on her testimony concerning the customer meeting and other alleged performance deficiencies. That testimony is properly considered. But even assuming the jury credited Freeland's account of one or more disputed incidents, the record contains numerous additional performance concerns documented by the decision maker over a concentrated period immediately preceding the termination.

Thus, the Court refrains from concluding Freeland's evidence is irrelevant. The Court instead concludes it is insufficient, when considered with the record as a whole, to create a genuine dispute on the ultimate issue of discriminatory intent.

For all these reasons, the Court will overrule Freeland's first objection.

In Freeland's second objection, she complains the Magistrate Judge "erroneously adopts [Kemira's Vice President of People and Culture in its Human Resources Department, Jackie Whitehead's] admittedly speculative reconstruction of the 2021 performance evaluation to convert a 'meets expectations' rating into evidence of substandard performance[.]" Freeland's Objections at 5 (quoting Report at 10) (emphasis omitted) (capitalization standardized).

The Court agrees the 2021 evaluation itself states Freeland received an overall rating of "meets expectations." The Court does not alter that rating or conclude Freeland was rated below expectations in 2021. But that is not dispositive.

That evaluation, again, concerned Freeland's performance in 2021. The adverse employment decision occurred in April 2022. The issue before the Court is not whether Freeland was a satisfactory employee at some earlier point in time. The issue is whether the evidence permits a reasonable jury to find Strickland's contemporaneous assessment of Freeland's performance was a pretext for sex discrimination.

The record contains substantial evidence Strickland observed and documented performance deficiencies after he assumed responsibility for Freeland. His April 20, 2022, email to Human Resources identifies numerous specific incidents occurring during March and April 2022. Strickland thus determined termination was warranted.

The 2021 evaluation, of course, fails to eliminate Kemira's evidence concerning Freeland's performance in March and April 2022. Thus, any "speculative reconstruction of the 2021 performance evaluation[,]" Freeland's Objections at 5 (emphasis omitted) (capitalization standardized) is inconsequential.

Freeland is correct that credibility determinations are not permitted at summary judgment. But the Court need not make a credibility determination to conclude Freeland has failed to produce sufficient evidence of discrimination. Even crediting Freeland's testimony where appropriate, the record contains numerous performance issues concerning Freeland's job performance.

Accordingly, the Court will overrule Freeland's second objection, too.

Third, Freeland maintains the Magistrate Judge "erroneously excises the PIP from the pretext analysis even though the decision maker's own April 20, 2022[,] email invoked the PIP, and a jury could find the PIP was never communicated, acknowledged, or implemented[.]" Freeland's Objections at 5 (emphasis omitted) (capitalization standardized).

Even assuming Freeland is correct in stating questions exist concerning whether the PIP was communicated, acknowledged, or implemented as contemplated, those questions fails to establish Strickland terminated Freeland because of her sex. Put another way, the Court is unable to fathom how Strickland's "April 20, 2022[,] email invok[ing] the PIP, and a jury . . . find[ing] the PIP was never communicated, acknowledged, or implemented[,]" *id*. (emphasis omitted) (capitalization standardized), could somehow translate into evidence of Freeland's sex discrimination claim. The Court wholly agrees with the Magistrate Judge: "none of the evidence . . . reasonably suggests . . .the PIP or the failure to meet the prior supervisor's PIP was a reason used in his decision to terminate [Freeland's] employment." Report at 10.

"Moreover, no evidence suggests . . . the PIP's author and [Freeland's] former supervisor, Mangano, was involved in any manner in the decision to terminate [Freeland]." *Id*..

Freeland focuses heavily on the sentence in Strickland's email stating he believed she had been placed on a PIP the previous year and her performance had not improved. But that statement fails to transform the PIP into the sole or controlling reason for Freeland's termination. Again, Strickland's email identifies numerous performance issues he personally observed after becoming Freeland's supervisor.

The relevant question is not whether every statement in the employer's account was perfectly phrased or whether every prior performance-management document was administered precisely as

Freeland believes it should have been. The question is whether the evidence would permit a reasonable jury to find Strickland's asserted performance concerns were fabricated to conceal sex discrimination. It does not.

At most, the PIP evidence could permit a jury to question the weight or significance Strickland attributed to Freeland's earlier performance concerns. But she still must connect that dispute to discriminatory intent. A dispute about the existence, implementation, or significance of a PIP is not itself evidence Kemora acted because of sex.

Nor does the evidence establish Strickland fabricated the numerous March and April performance incidents. Freeland disputes some of those incidents, but the Court must distinguish between evidence an employee disagrees with the employer's factual assessment and evidence the employer's explanation was so implausible, inconsistent, or unsupported that a reasonable jury could infer discrimination. Freeland has failed to make a showing a reasonable jury could so find.

The Court therefore concludes that the PIP evidence, whether considered alone or together with the other evidence, is insufficient to create a genuine issue as to pretext sufficient to survive summary judgment.

Therefore, the Court will also overrule Freeland's third objection.

Fourth, Freeland contends the [Magistrate Judge] "erroneously resolves the 'shifting reasons' question as a matter of law when the characterization of [Kemira's] changing explanations is a question for the jury[.]" Freeland's Objections at 7 (quoting Report at 13) (emphasis omitted) (capitalization standardized).

The Fourth Circuit recognizes inconsistent explanations may be evidence of pretext. *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019) But not every additional explanation constitutes a materially inconsistent explanation.

The record here fails to establish the type of contradiction present in cases where the employer affirmatively abandoned one explanation and substituted another that was materially inconsistent with the first. Instead, the evidence reflects an employer that identified multiple performance concerns supporting its decision to terminate Freeland. She was not necessarily given every detail of those concerns at the moment of termination. That fact, however, is insufficient to show the reasons were invented later.

Strickland's April 20, 2022 email is particularly significant. Before Freeland was terminated, Strickland had already documented numerous specific performance concerns for Human Resources. Thus, the evidence fails to support any contention the performance deficiency list was created only after litigation commenced.

Likewise, the fact Freeland was initially told the company was "headed in a new direction" does not necessarily conflict with the employer's subsequent identification of performance concerns. Employers may communicate employment decisions without providing an exhaustive catalogue of every reason supporting the decision.

In addition, "an employer's multiple reasons do not create the inference of pretext where 'there has been no retraction of any of its reasons nor are any of its reasons inconsistent or conflicting.'" *Lyons v. City of Alexandria*, 35 F.4th 285, 292 (4th Cir. 2022) (quoting *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733–34 (7th Cir. 2001 (alteration omitted)).

Freeland relies on *Wannamaker-Amos*, but that case fails to establish every expansion or elaboration of an employer's stated reasons creates a jury question. The material question is whether the explanations are sufficiently inconsistent, false, or otherwise suspicious that a reasonable jury could infer the stated reason was not the actual reason.

As Kemira properly stated in its reply, "[n]othing in this record shows [it] ever abandoned or contradicted a previously given reason. Nothing in this record shows Kemira ever abandoned or contradicted a previously given reason." Kemira's Reply at 9. Kemira further correctly notes it "has consistently maintained the same account from the April 20 email forward. Additional detail disclosed in litigation is not the same as an inconsistent reason, and the Magistrate Judge correctly understood this distinction." *Id*.

Here, because Kemira's central explanation for Freeland's termiation remained materially consistent, the Court concludes the Report correctly rejected Freeland's shifting-reasons argument.

Thus, the Court will overrule Freeland's fourth objection, as well.

Fifth, Freeland says the Magistrate Judge "erroneously declares . . . the 'only reasonable inference' from . . . Whitehead's testimony [regarding Kemira's disciplinary policy] favors [Kemira], and misframes the policy deviation inquiry[.]" Freeland's Objections at 9 (quoting Report at 12) (emphasis omitted) (capitalization standardized).

The Court agrees with Freeland that evidence of an employer's departure from its established practices can, in an appropriate case, support an inference of pretext. *Wannamaker-Amos*, 126 F.4th at 260-61.

Here is a copy of the entire policy:

> At Kemira, we strive to create an environment in which all employees can be successful. Part of this process may include coaching and/or counseling sessions with your supervisor to make sure you understand

> the expectations of your position and how he or she evaluates your performance.
>
> In cases where the supervisor feels improvement is needed, he or she may use a variety of actions to call attention to the issue. Types of actions a supervisor may take include coaching, written counseling actions, time off from work, or termination of employment. Any and all steps may or may not be used, depending upon the individual circumstances and the nature of the performance issue or infraction. Moreover, exceptions or deviations from the above steps may occur whenever Kemira deems appropriate.

Report at 12 (citation omitted).

First, concerning Whitehead's testimony, the Court declines any invitation to parse all her statements concerning the policy. This one will suffice: "So just once again, you know, like I said, the whole thing with—with the performance, it just depends upon, you know, the nature of the incident of what's going on with the, you know, with the—the person." Report at 12. This statement suggests the policy is permissive.

Second, the policy itself proves it is permissive, as opposed to being mandatory. A reasonable fact finder would be unable to conclude otherwise. Thus, whether Whitehead's testimony about Kemira's disciplinary policy favors Kemira is without any import.

Every sentence in the policy, except the first one, includes the permissive word "may." And, after listing possible actions "a supervisor may take[,]" it states "[a]ny and all steps may or may not be used, depending upon the individual circumstances and the nature of the performance issue or infraction." *Id*. Additionally, the policy concludes with this: "exceptions or deviations from the above steps may occur whenever Kemira deems appropriate." *Id.*

More importantly, even if Freeland could establish some deviation from Kemira's permissive disciplinary policy, that would not by itself establish sex discrimination. The Court must consider

whether the departure, together with the other evidence, would permit a reasonable jury to conclude Kemira's stated performance rationale was pretextual. The record fails to support that conclusion.

Freeland was not discharged after a single isolated incident. Strickland documented numerous performance issues over approximately six weeks. Further, as the Court discussed above, it does not decide whether termination was the best or fairest response to those issues. That is not the Court's role. An employer may make employment decisions for reasons that are unfair, unwise, or even mistaken, so long as those decisions are not made because of a protected characteristic.

Freeland's argument ultimately asks the Court to infer discriminatory motive from the employer's decision to terminate without first imposing every step described in its permissive disciplinary policy. The evidence is insufficient to support such an inference.

In sum, because both Whitehead's testimony and Kemira's disciplinary policy establish it is permissive, the Court will overrule Freeland's fifth objection.

Sixth, Freeland insists the Magistrate Judge "ignores the timing of [Oliver Bentley Jr.'s] hiring as evidence . . . the termination decision predated the alleged infractions, and improperly evaluates the replacement evidence in isolation[.]" Freeland's Objections at 11 (emphasis omitted) (capitalization standardized).

Freeland argues the timing of Bentley's hiring constitutes evidence Strickland had decided to terminate Freeland even before several of the alleged performance incidents occurred. The Court has considered the timing of Bentley's hiring, but concludes it is insufficient, standing alone or in conjunction with the other evidence, to create a genuine issue of material fact as to discriminatory intent.

The record shows Strickland offered Bentley a position with Kemira in early April 2022, and he began working after Freeland's termination. According to Strickland, Bentley was hired to fill Strickland's former position, rather than as a replacement for Freeland. Freeland takes issue with this claim.

But, even if a reasonable jury could find Bentley functionally replaced Freeland, that fact, without more, fails to establish Freeland's sex discrimination claim. Replacement by a person such as Bently, who is outside the protected class, may support the fourth element of a prima facie case, by "rais[ing] a reasonable inference of unlawful discrimination," *Sempowich*, 19 F.4th 650, but it fails to automatically establish pretext or discriminatory motive.

Strickland had previously supervised Bentley and had served as a professional reference. But Freeland is unable to show such familiarity was related to Freeland's sex or Strickland selected Bentley simply because he was a male.

Bentley received around forty-five percent of Freeland's accounts. But, the Court is unable to say that establishes he was hired to replace her. In fact, the record establishes Freeland's accounts were distributed among several employees, including a female Account Manager, who also received approximately forty-five percent of Freeland's accounts.

Most importantly, however, Freeland's contention concerning the timing of when Bentley was hired fails to overcome the substantial evidence supporting Kemira's performance-based explanation for terminating Freeland's employment. The Court must review the record "taken as a whole." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Accordingly, the Court rejects any suggestion the timeline of the hiring of Bentley at Kemira creates a triable issue of discrimination. Therefore, it will overrule Freeland's sixth objection.

In Freeland's seventh objection, she argues the Magistrate Judge "statement . . . there is 'no evidence' connecting the termination to gender overlooks [Freeland's] verified charge, her sworn comparator testimony, and . . . Strickland's own email[.]" Freeland's Objections at 13 (quoting Report at 14) (emphasis omitted) (capitalization standardized).

Freeland's sworn Charge of Discrimination contains allegations concerning the treatment of male employees. She states "the male sales persons had similar issues with customers over the last [five] years and none were terminated[.]" *Id*. Her deposition testimony likewise identifies male employees whom she contends received progressive discipline before termination. This evidence, however, is insufficient to permit a reasonable jury to find Freeland was treated differently because she was female.

The similarly situated element requires a plaintiff to "provide evidence . . . the proposed comparators are not just similar in some respects, but 'similarly-situated in all respects.'" *Spencer v. Va. State Univ.*, 919 F.3d 199, 207–08 (4th Cir. 2019) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). To that end, "the plaintiff must produce evidence . . . the plaintiff and comparator 'dealt with the same supervisor, were subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haynes*, 922 F.3d at 223–24) (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (alteration marks omitted)).

Freeland has been unable to establish the employees she identifies were similarly situated to her in the circumstances material to this case. For instance, the record fails to demonstrate those employees were supervised by Strickland at the relevant time, they committed the same combination

of alleged performance deficiencies, or their circumstances were materially comparable to Freeland's six-week period of performance under Strickland.

Freeland also points to Strickland's April 20, 2022, email in which he states male salespersons might commit one or two of the listed errors in a given year and still be considered acceptable performers. In lieu of establishing Strickland treated male employees more favorably than Freeland, however, it instead distinguishes Freeland's conduct based on the number and concentration of her alleged performance deficiencies.

The Court therefore concludes Freeland has failed to produce sufficient comparator or other gender-based evidence to permit a reasonable jury to find intentional sex discrimination. Accordingly, the Court will overrule her seventh objection, as well.

Eighth, Freeland maintains the Magistrate Judge "fails to analyze the fourth element of the prima facie case, under which replacement by a male satisfies the inference of discrimination[.]" Freeland's Objections at 15 (emphasis omitted) (capitalization standardized).

Freeland appears to have misread the Report inasmuch as the Magistrate Judge in fact considered Freeland's contention Bentley replaced her. She concluded, however, "even if a reasonable jury could find . . . Bentley replaced [Freeland], in light of all of the evidence presented, no reasonable jury could find the hiring of Bentley alone sufficient to demonstrate [the] the reasons offered for [Freeland's] termination were pretext for gender discrimination." Report at 15 n.4.

Freeland is correct in arguing replacement by an individual outside the protected class may satisfy the fourth element of a prima facie case. *See Brown v. McLean*, 159 F.3d 898, 905 (4th Cir. 1998) ("[T]o make out a prima facie case of discriminatory termination, a plaintiff must ordinarily show that the position ultimately was filled by someone not a member of the protected class."). But

satisfying the fourth element on its own is an insufficient basis for which a plaintiff can establish Title VII liability.

Indeed, it is unnecessary for the Court to definitively resolve whether Bentley was technically Freeland's "replacement." Even assuming that proposition in Freeland's favor, the remaining evidence fails to support a reasonable finding of discriminatory intent.

Here, Freeland is unable to establish the required connection between Bentley's hiring and sex discrimination. As already noted, the record shows Bentley was hired to fill Strickland's former position following Strickland's promotion and Freeland's accounts were redistributed among multiple employees, with approximately forty-five persent of her accounts going to Bentley and around forty-five percent of her accounts being assigned to a female account manager.

Therefore, even if a reasonable jury could reject Kemira's characterization and conclude Bentley replaced Freeland, the inference of discrimination would remain speculative and based on nothing more than conjecture. Simply put, Freeland is unable to survive summary judgment by merely pointing to the identity of the employee who assumed some of her responsibilities.

For all these reasons, the Court will also overrule Freeland's eighth objection.

In Freeland's ninth objection, she argues Magistrate Judge "misapplies [*Burns v. AAF-McQuay, Inc.*, 96 F.3d 728 (4th Cir. 1996)]; [Freeland] rebutted the reasons she was ultimately given and produced evidence . . . a third justification was never an operative step, and she need not disprove all [the] reasons first disclosed in litigation." Freeland's Objections at 16 (emphasis omitted) (capitalization standardized).

The Court agrees with Freeland: lacking from Title VII is any mathematical requirement a plaintiff disprove a particular percentage of an employer's asserted reasons before pretext can be inferred.

As the Magistrate Judge stated in the Report, "[i]n *Burns*, the plaintiff had offered sufficient contradictory evidence casting doubt on sixteen of the approximately eighteen reasons offered by the defendant for the plaintiff's demotion as well as proof that her supervisor made ambiguous comments about her age." Report at 14 n.3. "Thus," the Magistrate Judge concluded, "the *Burns* Court found a reasonable jury may accept that evidence and may reasonably conclude the other two reasons were pretext for age-based discrimination, and therefore, summary judgment was not appropriate on that claim." *Id*.

The Court is unable to agree with any suggestion *Burns* establishes a plaintiff survives summary judgment whenever she disputes some of an employer's asserted reasons. Rather, the question remains whether the record, considered as a whole, permits a reasonable jury to conclude the employer's stated reasons were false and discrimination was the actual reason. The record in this case disallows such a conclusion.

Freeland takes issue with several of Strickland's assertions regarding her poor performance. The record contains multiple performance concerns documented contemporaneously by Strickland. Some were based on his own observations; others involved customer or internal communications.

The Court accepts, for purposes of summary judgment, those disputes create factual disagreements concerning particular events. But the Court is unable to agree those disagreements demonstrate Strickland did not honestly believe Freeman was performing inadequately or that the existence of disputes means Kemira's explanation was necessarily false.

A Title VII plaintiff is unable to survive summary judgment by showing the employer may have been mistaken about some aspect of the employee's performance. Instead, the plaintiff must produce evidence from which a reasonable jury could conclude a protected characteristic, in this instance Freeland's sex, was the actual reason for the adverse action. Freeland has failed to do so.

Although sufficient evidence the employer's explanation is false would allow an inference of discrimination, the plaintiff still has the ultimate burden of proving intentional discrimination. "Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude . . . discrimination had occurred." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 134–35 (2000).

"For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148.

This is what we have here. The Court therefore concludes that Freeland's disputes concerning individual performance allegations fail to, either individually or collectively, create a genuine issue as to whether sex was the reason for her termination.

Consequently, the Court will overrule Freeland's ninth objection, as well.

In Freeland's tenth objection, she says "the recommendation to remand the state law claims is entirely derivative of the Title VII ruling and falls with it[.]" Freeland's Objections at 16

According to Freeland, "[i]f the Court sustains any of [her] objections and denies summary judgment on the Title VII claim, the predicate for remand disappears, and the Court should retain jurisdiction over all claims and counterclaims, which arise from the same nucleus of operative fact."

But, the Court has declined to sustain any of Freeland's objections as to her Title VII sex discrimination claim. Hence, the Court will overrule Freeland's tenth objection, as well.

Kemira presents just one objection to the Report. It states "[t]he Magistrate Judge erred in[:] recommending . . . the Court decline to exercise jurisdiction over [Freeland's] state law claims and [its] state law counterclaim[,] . . . . failing to address the state law claims or the facts upon which those claims are based[,] . . . . [and] failing to recommend summary judgment on the state law claims[.]" Kemira's Objections at 1.

The Court "enjoy[s] wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). "'Generally, [however,] when a district court dismisses all federal claims in the early stages of litigation'—e.g., at the summary-judgment stage—'it should decline to exercise jurisdiction over any remaining pendent state law claims by [remanding those claims to state court].'" *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024) (quoting *Banks v. Gore*, 738 F. App'x 766, 773 (4th Cir. 2018)).

When making this determination, the Court should consider the "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id.* (citing *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Here, the Court is unconvinced this is anything but "the usual case in which all federal-law claims are eliminated before trial, [and] the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—[all] point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7.

The Court will thus overrule Kemira's objection and refrain from exercising jurisdiction over the state law claims.

* * * * *

In sum, Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on protected traits, but it does not police general poor business judgment or unwise decisions unless they are tied to unlawful bias. Stated a bit differently, Federal anti-discrimination laws do not make it illegal for an employer such as Kemira to be unfair, harsh, or make mistakes in managing personnel, as long as the action is not motivated by a protected characteristic.

A discrimination claim is unable to survive or succeed if it, like here, is based purely on guesswork, hunches, or speculation without supporting evidence of discriminatory intent. Freeland's subjective belief of discrimination, standing alone, in unable to vanquish summary judgment.

## VI. CONCLUSION

After a thorough review of the Report and the record in this case pursuant to the standard set forth above, the Court overrules all the objections, adopts the Report, and incorporates it herein. It

is therefore the judgment of this Court Kemira's motion for summary judgment is **GRANTED**. Freeland's federal claims are **DISMISSED WITH PREJUDICE**.

And, because the Court declines to exercise supplemental jurisdiction over the parties' state law claims, those claims are **REMANDED** to the Lexington County Court of Common Pleas.

**IT IS SO ORDERED**.

Signed this 29th day of September, 2026, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE